UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUL 2 6 2005


CLERK

```
******************************************************************
                                    *
JOYCE LOUDNER, AMBROSE              *    CIV 94-4294
McBRIDE, CHAUNCEY LONG CROW,        *
DELLA LYTLE, HILDA LONG CROW,       *
LISA REDWING, HORACE GILBERT        *
SLOW, DARLENE FALLIS JONES,         *
LYLE MEDICINE CROW, RAMONA          *
ESTES, FAY JANDREAU, NORMAN         *    MEMORANDUM OPINION
V. TAYLOR, and KATHRYN RATLIFF,     *    AND ORDER
                                    *
         Plaintiffs,                *
                                    *
    -vs-                            *
                                    *
UNITED STATES OF AMERICA, and       *
GALE NORTON, individually and in her *
capacity as Secretary of the Interior, *
                                    *
         Defendants.                *
                                    *
******************************************************************
```

    Following the entry of Judgment in this case, Plaintiffs filed a Motion for Attorney and Expenses Under the Equal Access to Justice Act, Doc. 305. The motion has been fully briefed by the parties. Having carefully considered the entire record in this action, the Court will grant the motion for the reasons stated below, but will require additional briefing regarding the amount to be awarded.

    The history of this action has been set forth in several prior opinions and will be repeated in this opinion only as necessary to resolve the pending motion. This action was filed in 1994 to allow Plaintiffs to apply for a share of the Judgment Fund at issue in this lawsuit. Plaintiffs are lineal descendants who were not previously notified by the Secretary of the Interior ("Secretary") of the existence of the Judgment Fund at issue in this lawsuit. Throughout these proceedings, Plaintiffs

amended their complaint several times. The Fourth Amended Complaint, Doc. 204, was the final complaint filed in this action. The primary amendment to the initial complaint was to add a challenge to the Mississippi Sioux Tribes Judgment Fund Distribution Act of 1998 ("the 1998 Act"), Pub.L.No. 105-387, 112 State. 3471 (codified at 25 U.S.C. § 1300d-21 *et seq.*) (2001). On February 24, 2004, the Court dismissed with prejudice several paragraphs of the Fourth Amended Complaint to the extent that those paragraphs challenged the constitutionality or validity of the 1998 Act. (Memorandum Opinion and Order, Doc. 277.) Pursuant to Federal Rule of Civil Procedure 54(b) a final judgment was entered in favor of the Defendants as to the dismissed claims. (Judgment, Doc. 278.)

The remaining claims in the Fourth Amended Complaint were dismissed as moot in January 2005 and a Judgment was entered in favor of Defendants. (Doc. 302, 303, February 16, 2005.) The claims that were dismissed as moot in January 2005 involved the Defendants' failure to notify Plaintiffs of the existence of the Judgment Fund. The two types of relief requested in the Fourth Amended Complaint were for distribution or damages in the amount of the Plaintiffs' share of the Judgment Fund, plus interest, and an award of attorney's fees and costs under the Equal Access to Justice Act. In a Special Status Report filed on October 12, 2004, Doc. 298, the Defendants reported that the lineal descendants' final share of the Judgment Fund was distributed on Friday, October 1, 2004.

Soon after this action was filed, the Court issued a preliminary injunction on January 6, 1995, restraining the Defendants from distributing the Judgment Fund. The Court held that Plaintiffs' claims were time-barred, however, and dismissed this action. The preliminary injunction was dissolved on October 13, 1995. On appeal, the Eighth Circuit reversed the dismissal of this action. *See Loudner v. United States*, 108 F.3d 896 (8th Cir. 1997). Upon remand, the Court reinstated the preliminary injunction to prohibit the distribution of the Judgment Fund. (Order, Doc. 66, April 28, 1998.) The Judgment Fund, therefore, was not distributed until Plaintiffs were given an opportunity to submit their applications to share in the fund. The preliminary injunction was later modified to allow partial distributions of the fund in approximately April 2002 (Doc. 232), in December 2003 (Doc. 271) and in September 2004 (Doc. 291). After all applications were processed, including

Plaintiffs' applications, and the final roll was prepared, Defendants requested that the Court lift the preliminary injunction to allow the final distribution of the Judgment Fund. That request was granted (Doc. 295) and the final distribution of the Judgment Fund was made on or about October 1, 2004.

## DISCUSSION

The Supreme Court explained the "American rule" is that parties to litigation are ordinarily required to bear their own attorney's fees. *See Buckhanon Bd. & Care Home, Inc. v. West Virginia Dept' of Health and Human Res.*, 532 U.S. 598, 602 (2001). An award of attorney's fees to the "prevailing party," however, is authorized in several statutes, including the Equal Access to Justice Act ("EAJA"). The EAJA permits most parties who prevail against the United States in civil litigation to recover costs. *See* 28 U.S.C. § 2412(a) (1994). The EAJA also permits those parties to recover attorney fees and some litigation expenses unless "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. 2005). The EAJA is a partial waiver of the United States' sovereign immunity, and, thus, must be strictly construed in the government's favor. *See Ardestani v. Immigration and Naturalization Serv.*, 502 U.S. 129, 137 (1991).

An applicant for attorneys' fees and expenses under the EAJA must submit an application for fees "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B) (1994). A "final judgment" is defined as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G) (Supp. 2005). Plaintiffs' application for fees and expenses under the EAJA was timely submitted. In light of the Judgment of dismissal in favor of Defendants, the Court directed the parties to brief the issue of whether Plaintiffs are prevailing parties as defined under the EAJA in light of the preliminary injunctions granted by the Court and also in light of the reversal in Plaintiffs' favor that Plaintiffs obtained from the Eighth Circuit Court of Appeals. (Order, Doc. 302.)

1. **Prevailing party**

The first issue that must be addressed is whether Plaintiffs are "prevailing parties" under the EAJA. The Supreme Court explicitly rejected the "catalyst theory" as a basis for defining prevailing

party because that theory "allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Buckhanon*, 532 U.S. at 605. The Eighth Circuit recognized, "[t]he Supreme Court has made clear '"that a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail,'" *Id.* at 603-04 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)), such that the relief 'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "Further, the change in the relationship must be 'judicially sanctioned;' a voluntary change in the relationship between the parties as a result of a lawsuit is insufficient to trigger a shift in the general rule that parties pay their own fees." *Id.*

Although Plaintiffs did not secure a judgment on the merits or a court-ordered consent decree, Defendants did not voluntarily change their position regarding Plaintiffs' eligibility to share in the Judgment Fund. Plaintiffs brought this action alleging that they have been deprived of valuable property rights by the Secretary's failure to provide adequate notice to potential claimants of the lineal descendants' share of the Judgment Fund. Defendants' position regarding Plaintiffs' eligibility to share in the Judgment Fund before the Eighth Circuit ruled otherwise, was that Plaintiffs were barred from participating in the distribution of the Judgment Fund because they did not submit their applications as lineal descendants by the deadline of November 1, 1973, and that this action was barred by the statute of limitations set forth in 28 U.S.C. § 2401. *See* 25 C.F.R. § 61.4(s)(2) (establishing deadline for submitting applications to share in the distribution of the Judgment Fund).

Contrary to Defendants' position, the Eighth Circuit held that, "[b]ecause the plaintiffs' claims did not accrue until they had reason to know of the existence of the judgment fund and how it would be distributed, ... their claims are not time-barred." *Loudner*, 108 F.3d at 898. The conclusion that Plaintiffs' claims were not time-barred was based on the underlying holding that the Secretary breached his trust obligations to Plaintiffs:

> We hold that providing an unreasonably short time period to allow beneficiaries to apply for their share of the fund and failing to provide beneficiaries with adequate

4

> notice, the Secretary acted contrary to his common-law obligations as trustee. Accordingly, the Secretary's deadline is invalid, and plaintiffs should have the right to apply for their share of the fund.
>
> As we discussed above, the Secretary's minimal efforts to notify beneficiaries of the existence of the trust corpus demonstrate that he was not fulfilling his trust obligations when he formulated the distribution plan.

108 F.3d at 903. The Eighth Circuit's ruling changed the legal relationship between the parties, giving Plaintiffs "at least some relief on the merits of [their] claim." *Buckhannon*, 532 U.S. at 603-04. The Eighth Circuit's decision "modif[ied] the defendant's behavior in a way that directly benefit[ed] the plaintiff[s]." *Sierra Club*, 351 F.3d at 845. Before the Eighth Circuit's ruling, the Defendants took the position and obtained a court ruling that adequate notice had been given to Plaintiffs of the existence of the Judgment Fund, that Plaintiffs' claims were time-barred and that Plaintiffs could not share in the distribution of the Judgment Fund. After the Eighth Circuit's ruling, however, Defendants were no longer in a position, given the Secretary's trust duties owed to Plaintiffs, to deny Plaintiffs the ability to submit applications to share in the Judgment Fund. Rather, had Defendants continued to take the position that Plaintiffs were barred from applying for their share of the Judgment Fund, there would have been an additional breach of the Secretary's trust obligations to Plaintiffs. Accordingly, in this litigation, Plaintiffs did receive the exact relief they sought in filing this action and it was not due to a voluntary change in the parties' relationship.

In addition to the relief granted by the Eighth Circuit, the Plaintiffs obtained preliminary injunctions in this Court to prevent the distribution of the Judgment Fund to allow Plaintiffs the opportunity to apply for their share of the Judgment Fund. At the time this litigation was filed, the Defendants were intending to distribute the Judgment Fund to the 1,969 beneficiaries who had submitted their applications by the November 1, 1973 deadline (which the Eighth Circuit found was an invalid deadline) and were approved applicants. In a preliminary injunction issued two weeks after the filing of this lawsuit, the Court enjoined Defendants from distributing the Judgment Fund. (Order, Doc. 12, Jan. 6, 1995). The Court dissolved the preliminary injunction when it ruled that Defendants had given adequate notice of the existence of the Judgment Fund and that Plaintiffs were barred by the statute of limitations from sharing in the Judgment Fund. (Order, Doc. 28, Oct. 13,

5

1995). The Eighth Circuit then ruled that Plaintiffs' claims were not time-barred and that they should be given an opportunity to submit their applications to share in the Judgment Fund. After this action was remanded by the Eighth Circuit, the preliminary injunction was reinstated, thus again preventing Defendants from distributing the Judgment Fund until after Plaintiffs had an opportunity to submit their applications to share in the fund. (Order, Doc. 66, April 29, 1998.)

The first remedy sought by Plaintiffs in their Complaint was, "[t]hat the Court enjoin the distribution of funds described herein pending a proper determination by the Secretary of the Interior of the persons lawfully entitled to per capita distribution of the funds after actual notice to potential recipients to the extent reasonably possible." (Complaint, Doc. 1, at 9-10.) The preliminary injunctions granted in this action gave Plaintiffs the exact relief they were seeking. As a direct result of this action, Defendants did not distribute the Judgment Fund to the 1,969 lineal descendants the Secretary had determined were eligible to share in the Judgment Fund, to the exclusion of the Plaintiffs and others similarly situated. Rather, as the Eighth Circuit held, Plaintiffs were given the opportunity to submit their applications to share in the Judgment Fund. After nearly seven and one-half years after the mandate was issued remanding this case, the Judgment Fund has been distributed amongst the original 1,969 lineal descendants and the additional 5,147 lineal descendants that were allowed to submit applications as a result of the Plaintiffs' success in this lawsuit. (See Special Status Report, Doc. 298, Oct. 12, 2004.)

The above discussion reveals that, "like the benefit plaintiffs receive through court-approved consent decrees, the relief that [Plaintiffs] received in this case was 'the product of and bears the sanction of, judicial action *in the lawsuit*.'" *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 947 (D.C.Cir. 2005) (quoting *Buckhannon*, 532 U.S. at 618 (Scalia, J., concurring)) (awarding attorney's fees to plaintiffs who obtained a preliminary injunction that created a material alteration in the legal relationship between the parties and it was the exact relief the plaintiffs sought). As in *Select Milk Producers*, the preliminary injunctions in combination with the Eighth Circuit's decision "provided concrete and irreversible judicial relief" to Plaintiffs. *See id.* at 948. Unlike the relief awarded to the plaintiff in *Sierra Club*, 351 F.3d at 840, where the Eighth Circuit found the plaintiff was not a prevailing party, Plaintiffs can point to the effect that the relief obtained in this lawsuit had

6

on the Secretary's behavior toward Plaintiffs: the Secretary could no longer refuse to accept and process Plaintiffs' applications to share in the Judgment Fund.

The present case is much like *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004), where the Plaintiff was awarded an injunction barring the Secretary of the Army from transferring Fort Ritchie, a closed military United States Army base in Maryland, until he complied with applicable regulations. The plaintiff in *Role Models* was a non-profit educational organization that desired to establish a military-style magnet high school for troubled youth. When plaintiff's attempts to acquire Fort Ritchie were unsuccessful, it filed an action alleging the Secretary had violated federal regulations by failing to provide adequate notice of the fort's availability. *See id.* at 965. The *Role Models* plaintiff requested a declaration that the Secretary's failure to give adequate notice was unlawful; a directive that the Secretary comply with regulatory requirements, which would give plaintiff an opportunity to compete for the property; and an injunction prohibiting conveyance of Fort Ritchie until the Secretary so complied, or alternatively, require the Secretary to transfer Fort Ritchie to plaintiff. *See id.* The district court denied a preliminary injunction, but the District of Columbia Circuit Court of Appeals reversed. *See id.* Holding that the Secretary had violated the relevant regulations by failing to provide adequate notice of Fort Ritchie's availability, the court remanded the case to require the Secretary to comply with the procedural errors it had committed. *See id.*

In concluding that the plaintiff in *Role Models* was a "prevailing party" entitled to fees under the EAJA, the court found that the injunction "had a[n] ... external effect' – postponing conveyance of Fort Ritchie until the Secretary complies with the relevant regulations – that likewise represents 'a substantial part of what plaintiff asked the court for in the first place.'" *Id.* at 966 (quoting *Grano v. Barry*, 783 F.2d 1104, 1110 (D.C.Cir. 1986)). Likewise, in this case, the Eighth Circuit's decision finding a breach of trust obligations by the Secretary and the preliminary injunctions issued by this Court, postponed distribution of the Judgment Fund until the Secretary complied with the procedural requirements of allowing Plaintiffs to apply for their share of the Judgment Fund. In their complaint, Plaintiffs asked for this precise relief. *See Watson v. County of Riverside*, 300 F.3d 1092, 1095-96 (9th Cir. 2002) (holding that a plaintiff who obtained a preliminary injunction was a "prevailing

7

party" because he obtained "significant, court-ordered relief that accomplished one of the main purposes of his lawsuit."). Based upon the discussion above, the Court concludes that Plaintiffs qualify as "prevailing parties" under the EAJA.

2. **Substantially justified position**

The next issue is whether the Defendants have established that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "A substantially justified position is one that is clearly reasonable, well founded in law and fact, and solid, even if it is not necessarily correct." *Harmon v. United States*, 101 F.3d 574, 586-87 (8th Cir. 1996); *see Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995). The United States bears the burden of proving that its position was substantially justified. *See Harmon*, 101 F.3d at 586. The EAJA defines "position of the United States" as "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings." 28 U.S.C. § 2412(d)(2)(D) (1994); *see Moseanko v. Yeutter*, 944 F.2d 418, 427 (8th Cir. 1991). In addition, the EAJA provides that "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B) (1994).

Given the trust obligations of the Defendants to Plaintiffs, and based upon the Eighth Circuit's discussion of the breach of those trust obligations, the Court finds that the Secretary's actions were not substantially justified. *See Loudner*, 108 F.3d at 901-03. The Secretary breached two of the fundamental obligations of a trustee, which are to identify trust beneficiaries and to notify them of the existence of the trust. *See id.* at 901-02. The steps taken by the Secretary to notify trust beneficiaries were "insufficient to put a reasonably diligent beneficiary on notice of the trust's existence." *Id.* at 902. Despite the Defendants' possession of an annuity roll showing that a

significant number of Sisseton-Wahpeton Sioux ancestors resided in the area of the Crow Creek Reservation, the Defendants did not even hold a meeting on the Crow Creek reservation to inform potential beneficiaries of the existence of the Judgment Fund. *See id.* The Eighth Circuit characterized the Secretary's actions to notify beneficiaries as "minimal efforts." *Id.* at 903. The Defendants' "minimal efforts" to identify and notify trust beneficiaries may have been due to a lack of funds to do more. But the Eighth Circuit specifically addressed this issue:

> We agree with the plaintiffs that the government may not avoid its trust duties on the grounds that the budget and staff of the Department of Interior are inadequate. This circumstance may well excuse any delay on the part of individual employees of the Bureau of Indian Affairs. But the United States may not evade the law simply by failing to appropriate enough money to comply with it.

*Id.* at 903, n.3.

In addition to the breach of trust obligations discussed above, the Eighth Circuit found that the Secretary's requirement that all trust beneficiaries submit their applications to share in the Judgment Fund within five months of the promulgation of the regulations establishing the deadline "was unreasonably short, especially given the fact that the lineal descendants of the Sisseton-Wahpetons who were not members of the three successor tribes did not participate in the lawsuit that led to the creation of the settlement fund and thus had no special reason to follow the proceeding." *Id.* at 903. "Moreover, the Secretary could not plausibly argue that this deadline was necessary (or even reasonably calculated) to distribute the fund quickly because ... more than 23 years later ... the fund remain[ed] undistributed." *Id.* "The only legitimate purpose of a deadline in this context is to prevent applications from continuing to trickle in after the Secretary is ready to distribute the fund. Since the deadline set by the Secretary bore absolutely no relationship to a realistic date of distribution, *it was arbitrary.*" *Id.* at 903, n.4 (emphasis added). Subsequent events proved the wisdom of the Eighth Circuit decision, with 5,147 more lineal descendants being found eligible to share as a result of the Eighth Circuit decision, with there having initially been 1,969 eligible lineal descendants. Based upon the above, the Court does not find that the Defendants have met their burden of proving that the Secretary's actions were substantially justified. *See Role Models*, 353 F.3d at 968 (recognizing that "[t]he government ... must demonstrate the reasonableness not only of its litigation position, but also of the agency's actions ...."). Additionally, the Court does not find

that any special circumstances exist to make an award unjust in this case. *See* 28 U.S.C. § 2412(d)(1)(A).

### 3. Amount of fees and expenses allowed

The final issue to be determined is the amount of attorney fees and expenses to award in this case. The Defendants argue that if Plaintiffs are awarded attorney fees, the statutory cap is $75 per hour, because at the time this litigation was commenced, that was the cap under 28 U.S.C. § 2412(d)(2)(A)(ii). The EAJA was amended, effective March 29, 1996, to increase the statutory cap to $125 per hour. *See* Pub.L. No. 104-121 § 232(b)(1), 110 Stat. at 863. The effective date provision for this amendment specifically states that the amendment "shall apply to civil actions ... commenced on or after the date of the enactment of this subtitle." *Id.* at § 233 (the Court assumes the reference to "331 and 332" is meant to refer to "231 and 232"). Plaintiffs assert that the $125 cap should be applied for hours worked after the reinstatement of Plaintiffs' injunctive relief following the appeal to the Eighth Circuit. Plaintiffs, however, provided no authority for this position and the Court did not locate any authority for applying the $125 cap rather than the $75 cap that was applicable when this action was commenced. Thus, the Court will apply the EAJA as it existed before the 1996 amendment.

> Before the 1996 amendment, the EAJA provided that the prevailing party may recover:
>
> reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.) ....

28 U.S.C. § 2412(d)(2)(A) (1994).

Plaintiffs request that they be awarded $200 per hour for the work performed by attorneys Rick Johnson[1] and Mike Abourezk. Plaintiffs contend that there are special factors, *see* 28 U.S.C.

---

[1] Mr. Johnson died during the course of this litigation and Mr. Abourezk left the law firm.

§ 2412(d)(2)(A)(ii), justifying attorney fees for these two attorneys above the statutory cap. One factor advanced by Plaintiffs is counsels' specialized knowledge of Indian law, which Plaintiffs claim was "needful in the litigation." They cite the Supreme Court's explanation of "special factors" under the EAJA:

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Pierce v. Underwood*, 487 U.S. 552, 572 (1988). Plaintiffs claim that the identifiable practice specialty in this case is Indian law. The Defendants, however, contend that Indian law is not a practice specialty as contemplated by the Supreme Court in *Pierce*. For example, Defendants point out that patent law is a practice specialty that requires the practioner to take and pass a special exam not required of other attorneys. The Court concludes that Indian law is an identifiable practice specialty, similar to having knowledge of a foreign law or language, but the Court does not find that this case required an attorney specialized in Indian law to handle the issues raised in the litigation. Moreover, while Mr. Johnson and Mr. Abourezk had several Native American clients, the Court does not find that at the relevant time period either attorney specialized in Indian law or possessed a greater degree of knowledge regarding Indian law than a number of other attorneys practicing in South Dakota. Mr. Johnson was an excellent trial lawyer, as is Mr. Abourezk. Trial lawyers with their abilities should be able to take on almost any kind of civil litigation and do a fine job of it. That is what appeared here. The Supreme Court does not, however, recognize those abilities as "special factors" under the EAJA.

The Supreme Court listed several factors that do not qualify as "special factors" under the EAJA because they are factors that apply to a broad spectrum of litigation: "'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' ... 'the results obtained,'... [and] 'the contingent nature of the fee.'" *Pierce*, 487 U.S. at 573. While the Court

11

concludes that this litigation involved some novel issues, that the case would have been undesirable to many attorneys, that counsel well handled the issues in this case and the results were better than may have been expected at the outset of the litigation, the Supreme Court has specifically held that those factors will not qualify as "special factors" sufficient to award an enhanced fee under the EAJA. *See id.* Thus, the Court does not find that Plaintiffs are entitled to an enhanced fee for the work performed by attorneys Johnson and Abourezk.

Although the "special factor" portion of this statute does not apply, the cost of living exception remains to be addressed. Given that this litigation began over 10 years ago, the Court finds an adjustment to the $75 cap should be made for the cost of living since October 1, 1981, the effective date of the EAJA as originally enacted. *See Johnson v. Sullivan*, 919 F.2d 503, 504 (8th Cir. 1990). Plaintiffs, however, have not provided a calculation for such an adjustment, likely because their position was that they should recover $200 per hour for the two primary attorneys involved in this case, or in the alternative, that the $125 per hour cap should apply. The Court will provide Plaintiffs an opportunity to submit a proposed calculation for a cost of living adjustment in this case and give the Defendants an opportunity to respond to Plaintiffs' calculation. In devising their proposed calculation, Plaintiffs should take into account the rate of inflation for each relevant year and establish the compounding effect of fees since 1981.

The number of hours requested for counsels' work is 2,294.21. (Docs. 308, 309, 312.) In Plaintiffs' Responsive Memorandum, Doc. 311 at n.1, counsel withdraws her request for 10 hours of file review and briefing, bringing the total to 2,284.21. In addition, the Court notes that the time spent by Matt Meyer was included in the total number of attorney hours, but the Court finds that Plaintiffs should be compensated at a rate of $50 per hour for Mr. Meyer's work in light of his status as a law school graduate and the $75 per hour rate applicable to all attorneys in this case.

Turning to Plaintiffs' request for expenses, the Court will not allow recovery of Westlaw expenses, as that is to be included in an attorney's hourly rate. *See Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983) (holding that, "computer-aided reserach, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of

12

cost in addition to the attorneys' fee award."); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) (holding that based on *Leftwich*, "the law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award."). When the hourly rate allowed is as low as will be allowed in this case, it may be that the prohibition of reimbursement for computer-based legal research will be revisited at some point by the Eighth Circuit in limited fee cases. *Standley* and *Leftwich* were not limited fee cases. The amount attributable to Westlaw charges is $2,223.65. In addition, the request for expenses includes $3,261.50 for "Lisa Red Wing." But there is no indication in the request regarding what type of services she provided. Plaintiffs must provide the Court with additional information regarding this individual or the amounts requested for her services will be denied. This requirement also applies to Rebecca Dolezal (October 10, 1997 for $50.00), and John Stekly (May 23, 2002 for $48.98). A final line item that must be explained by Plaintiffs is on May 5, 1998, for "Mr. Joseph Haas/Security Deposit" in the amount of $1,000. The Court required Plaintiffs to post security in the amount of $1,000 with the Clerk of Court pursuant to Fed.R.Civ.P. 65(c) when they appealed this Court's initial granting of summary judgment in favor of Defendants. (Doc. 66, April 28, 1998.) Given that Plaintiffs prevailed on appeal, Plaintiffs must explain why they are requesting reimbursement of the security from the Defendants, rather than moving the Court for release of the security deposited with the Clerk of Court. Accordingly,

IT IS ORDERED:

1. That Plaintiffs' Motion for Attorney Fees and Expenses, Doc. 305, is granted, and the amount of the fees and expenses will be determined after Plaintiffs submit the items listed in paragraph 2 and Defendants have responded to those items.

2. That, on or before August 15, 2005, Plaintiffs shall file and serve: (a) a proposed calculation for a cost of living adjustment to the $75 per hour cap for attorney fees, as allowed by 28 U.S.C. § 2412(d)(2)(A) (1994); (b) an explanation of the request for expenses for Lisa Red Wing, Rebecca Dolezal and John Stekly; and (3) an explanation of the request for reimbursement from Defendants of the security deposited with the Clerk of Court on May 6, 1998.

3. That, on or before September 1, 2005, Defendants may file and serve a response to the items submitted by Plaintiffs in accordance with Paragraph 2.

Dated this 26th day of July, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Sharon Sourio
DEPUTY

14